**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM MAUDE,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 18-cv-4080** |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.** **December 15, 2020**

Presently pending before the Court is Defendant's Motion to Exclude the Expert Report and Testimony of James Andrews (Def.'s Mot. to Exclude, ECF No. 38) and Plaintiff's response thereto (Pl.'s Resp., ECF No. 39). For the reasons that follow, Defendant's motion shall be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 3, 2017, while working as a firefighter for the Philadelphia Fire Department (PFD), Plaintiff aggravated an existing back injury. (Def.'s Mot. to Exclude 4). At Plaintiff's request, his supervisor completed a referral form for evaluation of the injury for workers' compensation and submitted it directly to a third-party medical clinic, WorkHealth. (*Id.*). However, WorkHealth rejected the referral because referrals from aggravation injuries must be submitted by the fire department's Human Resources (HR) office. (*Id.*).

WorkHealth informed HR of the issue. (*Id.*). Shauna Bracy, an HR manager, emailed PFD Deputy Chief Davidson Plaintiff's referral form and asked that he remind supervisors that HR must submit referrals for any injuries other than initial ones. (*Id.* Ex. D 3-4, ECF 38-4). Davidson forwarded Bracy's email and Plaintiff's attached referral form to other Chiefs within

the chain of command, but the email and form were later circulated to subordinate lieutenants and captains who had no need for accessing the form. (*Id.* Ex. D; Pl.'s Resp. 2).

Plaintiff claims that as a result of the improper disclosure of his workers' compensation form and the medical information contained therein, he suffered reputational damage within the PFD and related emotional and physical harm. (Sec. Am. Compl., ECF No. 11). He asserts a state law claim for breach of his employment contract (Count I) and federal claims for violation of the Americans with Disabilities Act (Count II) and his substantive due process rights (Counts III and IV). (*Id.*).

The parties engaged in discovery, and Plaintiff retained James H. Andrews as an expert witness. (Def.'s Mot. to Exclude Ex. E, ECF No. 38-5). Andrews is a Program Coordinator and Visiting Lecturer at the Johnstown Campus of the University of Pittsburgh School of Social Work and the former Manager of Quality Improvement at the University of Pittsburgh Medical Center's Western Psychiatric Institute and Clinic. (*Id.* Ex. E 18). He has taught and lectured extensively, primarily on topics related to social work. (*Id.* Ex. E 21-29).

On December 9, 2019, Andrews produced an expert report in this matter. (*Id.* Ex. E). He opined that "there was significant failure to comply with City policy & procedure standards and privacy and confidentiality regulations during the management of Mr. Maude's personal health information." (*Id.* Ex. E 12). He concluded that the unnecessary dissemination of Plaintiff's medical information "clearly violated" Defendant's privacy and confidentiality regulations and Plaintiff's employment agreement, as well as Health Insurance Portability and Accountability Act (HIPAA) regulations. (*Id.*) He further found that "no ADA need" existed for the dissemination of Plaintiff's information and that the dissemination had caused Plaintiff's claimed injuries. (*Id.*).

Defendant has moved to exclude Andrews' report and testimony under Federal Rule of Evidence 702. Defendant contends that that he is unqualified and that his conclusions are not based on specialized knowledge, and are irrelevant, confusing and misleading, and legal in nature. (Def.'s Mot. to Exclude 6-13). The matter is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

A district court has broad discretion in determining the admissibility of evidence. *See Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002). When faced with a proffer of expert testimony, the trial court must consider "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* (quoting *Daubert v. Merrell–Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). "These gatekeeping requirements have been extended to apply to all expert testimony." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

The admissibility of expert opinion testimony is governed by Rule 702 of the Federal Rules of Evidence. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Third Circuit has explained that Rule 702 embodies a "trilogy of restrictions" on the admissibility of expert testimony: (1) qualification; (2) reliability; and (3) fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The party

offering the expert must prove each of these requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999), *amended on other grounds by* 199 F.3d 158 (3d Cir. 2000).

## III. DISCUSSION

Defendant has moved to exclude Andrews for five reasons: (1) he is not qualified to opine on HIPAA regulations or municipal privacy and confidentiality policies; (2) his opinions are not reliable or based on specialized knowledge; (3) they are irrelevant; (4) they may mislead or confuse the jury and cause unfair prejudice; and (5) they present legal conclusions. (Def.'s Mot. to Exclude 6-13). For the reasons that follow, I find that Andrews qualifies as an expert and that his opinions are reliable, relevant and not misleading or confusing. However, I agree with Defendant that his testimony should be limited to avoid reaching ultimate issues for the jury.

### A. Qualification

"Qualification 'refers to the requirement that the witness possess specialized expertise.'" *Ellison v. United States*, 753 F. Supp. 2d 468, 475 (E.D. Pa. 2010) (quoting *Schneider*, 320 F.3d at 404). The Third Circuit has interpreted this prong of *Daubert* liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." *Schneider*, 320 F.3d at 404. As a result, the Third Circuit instructs that trial courts should not insist on a certain type of degree or background when evaluating the qualifications of an expert. *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) ("The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." (quoting FED. R. EVID. 702)); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)

(The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications."). "This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Therefore, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.* (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)).

Defendant acknowledges that Andrews has "vast professional and academic experience with social work," but it argues that he lacks "any expertise on HIPAA [or] general municipal privacy policy or confidentiality policy in the employment context." (Def.'s Mot. to Exclude 8). Plaintiff responds that Andrews has served as a management level administrator at a variety of institutions. (Pl.'s Resp. 9). They contend that in these roles he became knowledgeable about medical information privacy in the employment context and, in particular, HIPAA compliance. (*Id.*).

I conclude that Andrews is qualified to opine in this matter. According to his *curriculum vitae*, Andrews has approximately 15 years of managerial, supervisory and directorial administrative experience in health and human services fields. (Def.'s Mot. to Exclude Ex. E 18). Since 1995, he has owned and operated a forensic and legal consulting firm that provides, among other things, "risk management/compliance and administrative consulting." (*Id.* 19). He has also presented or lectured on "Confidentiality Basics" and "Senior Management Team HIPAA Training." (*Id.* 26, 28). The Court agrees with Plaintiff that in these roles Andrews would have acquired knowledge about policies and procedures, including HIPAA regulations, regarding disclosure of private medical information.

In reaching this conclusion, the Court is mindful of the Third Circuit's repeated emphasis on construing the qualification prong of *Daubert* liberally. Additionally, Defendant will have other opportunities to challenge Andrews' qualifications. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

Accordingly, I find that Andrews is qualified to testify regarding the requirements of HIPAA and Defendant's medical information privacy and confidential policies.

**B. Specialized Knowledge and Reliability**

Federal Rule of Evidence 702 permits a qualified expert to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702(a)-(d).

In evaluating an expert's reasoning or methodology, a court should consider:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*De La Cruz v. V.I. Water & Power Auth.*, 597 F. App'x 83, 91 (3d Cir. 2014) (citation omitted).

Nonetheless, an expert's opinion need only have "good," not necessarily "perfect," grounds. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744. Allowing an expert's opinion is not

an endorsement of it. "Good grounds" may exist "for an expert's conclusions even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result." *Id.* A judge "will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence." *Id.* at 745. In the end, "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." *Id.* at 744. The "ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.'" *Id.* (quoting *DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 956 (3d Cir. 1990)).

Defendant argues that Andrews fails to explain how his conclusions "resulted from the application of reliable principles and methods to the facts of this case." (Def.'s Mot. to Exclude 7). It claims that he merely reviewed Defendant's policies, including HIPAA, and concluded that Defendant violated them. Plaintiff counters that Andrews reliably applied his specialized knowledge to the facts of this case.

In this case, several of the eight factors listed above are difficult to apply to Andrews' methodology. *See De La Cruz*, 597 F. App'x at 91. However, "this list is non-exclusive and . . . each factor need not be applied in every case." *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)). When, as here, a court must evaluate an expert's use of "a non-scientific method," the court should consider these factors "where they are reasonable measures of the reliability of expert testimony." *Id.* (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 152). The court's gatekeeping role

requires that where an expert "base[s] testimony upon professional studies or personal experience, [he or she] employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field . . . ." *Id.* (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 152).

I find Andrews' opinions are the product of sufficiently reliable reasoning and factual application for admissibility. He reviewed the order of Philadelphia Mayor James Kenney that PFD workforce members with access to protected health information must handle it in accordance with "the HIPAA rules and all policies and procedures adopted by the City . . . ." (Def.'s Mot. to Exclude Ex. E 8). This order, as Andrews observes, also empowers the City's HIPAA Steering Committee to make recommendations regarding, *inter alia*, "[t]he adoption and revision of City HIPAA policies." (*Id.* Ex. E 8). Andrews analyzed Defendant's HIPAA Policy Manual (Manual) containing these policies. (*Id.* Ex. E 9-11). He noted that the Manual applies to "any workforce members of Support Units who have access to protected health information." (*Id.* Ex. E 10). He pointed out the table in the Manual that lists the PFD as a covered "Support Unit" and where the Manual sets forth the definition of "protected health information." (*Id.*) He observed that the Manual requires that PFD workforce members verify the authority of recipients of the information to receive it and acknowledges that improper disclosure may cause "financial harm, anxiety, and embarrassment," among other damage. (*Id.* Ex. E 9-10).

Andrews applied the contents of these documents to the facts of this case. He reviewed the record for evidence of consent to disclosure from Plaintiff but found none. (*Id.* Ex. E 10). He also reviewed the credentials and deposition testimony of Bracy, the HR manager who first forwarded Plaintiff's workers' compensation referral form to Deputy Chief Davidson. (*Id.* Ex. E 11-12). He highlighted in his report where Bracy testified that she had not expected Davidson to

forward the form outside the chain of command and that his doing so was neither "necessary" nor a "best practice." (*Id.*).

Defendant characterizes Andrews' methodology as "simply review[ing] the policies, along with HIPAA, and offer[ing] his subjective belief that the City violated those policies." (*Id.* 7). As noted, however, Andrews also reviewed the mayor's order requiring PFD workers to comply with HIPAA policies adopted by Defendant and the record in this case, including Bracy's testimony. Moreover, as set forth in Section III.E below, Andrews may not provide his legal conclusion that Defendant violated any applicable confidentiality policies or HIPAA regulations.

Nonetheless, Defendant's criticism of Andrews' methodology is not without any basis. Ultimately, Andrews reviewed Defendant's confidentiality policies and other documents in this matter and applied his expertise in and knowledge of HIPAA and medical information privacy practices in the employment context to reach his conclusions. The problem with Defendant's argument is that it is not clear what other methodology Andrews could have applied. The exercise before him did not lend itself to "a testable hypothesis" or a "known or potential rate of error." *See De La Cruz*, 597 F. App'x at 91 (citation omitted). Notwithstanding this fact, it is not uncommon for courts to allow expert testimony on the subject matter at issue here. *See MacGlashan v. ABS Lincs KY, Inc.*, No. 5:13–cv–00135, 2015 WL 403067, at *2 (W.D. Ky. Jan. 28, 2015) (expert permitted to opine as to HIPAA requirements); *Duling v. Domino's Pizza, LLC*, No. 1:13–CV–01570, 2015 WL 3407602, at *11 (N.D. Ga. Jan. 14, 2015) (experts permitted to opine on relationship between HIPAA and applicable standard of care); *Chopourian v. Catholic Healthcare W.*, No. S–09–2972, 2011 WL 6396500, at *2 (E.D. Cal. Dec. 20, 2011) (expert permitted to opine regarding requirements of "defendant's policies regarding patient confidentiality and information," including "forays into HIPAA regulations"); *cf. Thomsen v.*

*Sacramento Metro. Fire Dep't*, S–09–1108, 2013 WL 2458403, at *1 (E.D. Cal. June 6, 2013) (expert testimony required to interpret HIPAA).

Admittedly, these cases did not involve challenges to the experts' methodology under Rule 702. Nonetheless, nothing in these opinions indicates that the experts engaged in processes substantially different from Andrews'. I reiterate that when an expert bases opinions upon "a non-scientific method" like "personal experience," the applicable standard is whether he or she employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field . . . ." *Elcock*, 233 F.3d at 746 (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 152). Here, Andrews' review and analysis of Defendant's confidentiality policies, including adopted HIPAA provisions, and application of his expertise and experience with this subject matter meets the applicable standard. As such, I will allow him to present his opinions at trial, subject to the limitations set forth in Section III.E.

**C. Relevance**

"Under the Federal Rules of Evidence, evidence may only be admitted if it is 'relevant.'" *Winters v. Marina Dist. Dev. Co., LLC*, 317 F. App'x 286, 288 (3d Cir. 2009) (citing FED. R. EVID. 402). The "basic standard of relevance is . . . a liberal one." *Daubert*, 509 U.S. at 587. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Winters*, 317 F. App'x at 288 (citing FED. R. EVID. 401). "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992).

Defendant argues that Andrews' conclusion that it violated its confidentiality policies, including HIPAA, is irrelevant to any of Plaintiff's claims. (Def.'s Mot. to Exclude 11). As set

forth in Section III.E below, Andrews may not express an opinion as to the ultimate issue of whether Defendant violated any applicable confidentiality policies or HIPAA regulations, but I disagree that his testimony as to the requirements of these authorities is wholly irrelevant.

Such testimony is relevant to his breach of contract. A claim for breach of contract has three elements: (1) the existence of a contract; (2) a breach of the contract; and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). If, as Plaintiff alleges, his employment agreement incorporated Defendant's confidentiality and privacy policies, including HIPAA regulations, Andrews' testimony regarding what duties these policies and regulations placed upon Defendant may aid the jury in determining whether Defendant breached the employment agreement.

Andrews' opinions may also aid the jury in resolving Plaintiff's substantive due process claims. A substantive due process claim has four elements: (i) the defendant acted under color of law; (ii) a protected property or liberty interest is implicated; (iii) the defendant owed the plaintiff a duty of care; and (iv) a deprivation of a constitutional due process right occurred. *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010) (*citing Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994)). "[T]he government conduct must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (citing *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006)). This determination is "dependent upon the facts of each particular case." *Id.* (citing *Kaucher*, 455 F.3d at 425-26). As such, Andrews' testimony as to the requirements imposed by Defendant's policies, including any HIPAA regulations it adopted, is relevant to this determination. The jury may prove more likely to find that Defendant's actions shock the conscience if they violated its own policies and HIPAA. Conversely, it may be less likely to find that its actions shock the conscience if they did

not violate its policies or HIPAA. Andrews' testimony will aid the jury in reaching making its determination.

Although I shall permit Andrews to offer his opinions at trial, I agree with Defendant that his testimony is not relevant to the ADA claim. An ADA claim has three elements: "(1) [the plaintiff] is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998)). I fail to see how HIPAA or Defendant's policies regarding confidentiality and privacy have any bearing on this claim, and Plaintiff provides no explanation. Andrews may not testify that the requirements of HIPAA or Defendant's confidentiality and privacy policies impose any requirements under the ADA.

**D. Confusion and Prejudice**

Even if evidence is relevant, it may be inadmissible on other grounds. Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Defendant contends that Andrews' opinions should be excluded because his "status as an expert may mislead or confuse the jury about the applicability of HIPAA" and because his "opinion that the City violated its own policies, which represent nothing more than his personal belief, would become even more powerful when delivered from the stand cloaked in the authority and deference accorded to expert witnesses." (Def.'s Mot. to Exclude 12).

In short, Defendant argues that the jury may be misled and confused by the acceptance of Andrews as an expert. However, this argument ignores the jury instruction I will give at the commencement of trial regarding the weight, if any, of opinion witness testimony. *See, e.g.*, Model Civil Jury Instructions – Third Circuit 2.11, General Instructions for Use During Trial – Opinion Testimony (2019) (providing jury with factors to consider in determining weight, if any, of expert testimony). In addition, Defendant's contention that HIPAA has no "applicability" is, in effect, a relevance objection, which I have addressed as set forth in the preceding section. Andrews may offer an opinion regarding the requirements of HIPAA insofar as they relate to Plaintiff's breach of contract and substantive due process claims. Further, in Section IV.B, I rejected Defendant's contention that Andrews' opinions are "nothing more than his personal belief," as opposed to the reliable application of his expertise to the facts of the case.

Andrews' opinions will not confuse or mislead the jury, nor will they unfairly prejudice the jury against Defendant. As such, I will not limit his testimony on these grounds.

**E. Legal Conclusions**

Lastly, Defendant contends that Andrews' report and testimony should be precluded because he improperly opines that the dissemination of Plaintiff's medical information violated HIPAA regulations embodied in Defendant's policies and procedures for safeguarding private medical information. (*Id.* 13). Plaintiff responds that "Andrews uses HIPPA [sic] to inform concerning the standard of care owed by the City and nothing more." (Pl.'s Resp. 13-14).

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). Still, expert testimony which "merely tell[s] the jury what result to reach" is improper. FED. R. EVID. 704 advisory committee's note. Accordingly, an expert should not be permitted to testify as to an ultimate legal conclusion in the case, "as to do so would improperly invade the province of the court and

the jury." *Toscano v. Case*, No. 11–4121, 2013 WL 5333206, at *8 (D.N.J. Sept. 20, 2013) (citing *AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 534 (3d Cir. 2006)).

The advisory committee notes to Rule 704(a) provide an example concerning expert testimony on the capacity of a testator to make a will. The notes state that an expert may not offer the legal conclusion that a testator had capacity. FED. R. EVID. 704 advisory committee's note. However, an expert may testify that the testator had "sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme for distribution." *Id.*

Here, Andrews' conclusion that Defendant violated its confidentiality policies, including its "obligations under the HIPPA [sic] regulations" offers an opinion on an ultimate issue. *See* 29 CHARLES ALAN WRIGHT & VICTOR GOLD, FEDERAL PRACTICE AND PROCEDURE § 6284 (2d ed.) (finding Rule 704(a)'s use of "the word 'an' as opposed to the word 'the' . . . significant" and indicative "that there can be multiple ultimate issues" to a claim). If the jury finds that these policies and regulations formed material terms of his employment agreement, it may find Defendant liable on the breach of contract claim. To allow Andrews to opine that Defendant violated its policies and HIPAA regulations incorporated in his employment agreement usurps the jury's responsibility to determine whether a breach occurred.

Andrews' other HIPAA conclusions challenged by Defendant are permissible. Andrews opines that the information contained in Plaintiff's workers' compensation referral form meets HIPAA's definition of "protected health information" because it "is individually-identifiable and relates to a medical condition, treatment or payment for healthcare." (Def.'s Mot. to Exclude Ex. E 12). He notes that HIPAA covers "all protected health information," regardless of the form in which it is contained, and that at no time did Plaintiff authorize the dissemination of his information outside the necessary chain of command. (*Id.*). He also opines that there was no

other basis for disclosure and that "HIPAA establish[es] a floor, not a ceiling for the applicable standard of care . . . ." (*Id.*). Like the advisory committee notes' example regarding testator capacity, these opinions merely "explore[] [the] legal criteria" for the determination of an ultimate issue. FED. R. EVID. 704 advisory committee's note. They do not direct the jury what to conclude.

Therefore, Andrews' testimony shall be limited to the requirements of Defendant's confidentiality and privacy policies and HIPAA. His testimony shall be excluded to the extent that he opines that Defendant's conduct violated its policies, including any incorporated with reference to HIPAA.

BY THE COURT:

_/s/ Lynne A. Sitarski__________
LYNNE A. SITARSKI
United States Magistrate Judge