IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MAUDE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 18-cv-4080 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| Defendant. | : | |

### MEMORANDUM

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                June 4, 2021

Presently pending before the Court is Defendant's Motion for Summary Judgment (Def.'s Mot. for Summ. J., ECF No. 42) and Plaintiff's Response thereto (Pl.'s Resp., ECF No. 49). For the reasons set forth below, Defendant's motion is **GRANTED** as to all counts.

### I.   FACTUAL AND PROCEDURAL HISTORY

Defendant, City of Philadelphia, is a municipal entity which employs fire department and EMT personnel. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 2). At all times relevant to this litigation, Plaintiff was employed by the City of Philadelphia Fire Department (PFD) as a Firefighter. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 3; Def.'s Statement of Material Facts in Support of Mot. for Summ. J., ECF No. 42, Ex. 1, at 1[1]). On or around October 1, 2017, Plaintiff suffered an aggravation of a previous back injury. (Pl.'s Dep., 10/7/29, at 27–29). Plaintiff requested that his supervisor at PFD, Captain Zimmerman, fill out a form referring him

---

[1] Defendant filed a Statement of Material Facts as an exhibit attached to its Motion for Summary Judgment. Plaintiff does not dispute these facts in his Response. (ECF No. 49). Therefore, for the purposes of this motion, this Court will accept the facts contained in Defendant's Statement as true.

to WorkHealth, a third-party medical clinic, to have his injury evaluated for workers' compensation. (Statement of Material Facts, ECF No. 42, Ex. 1, at ¶ 3; Pl.'s Dep., 10/7/19, at 32–33; WorkHealth Referral Form, Mot. for Summ. J., ECF No. 42, Ex. B). The form describes Plaintiff's injury as "[r]ecurring back pain from previous injury" and identifies him by name. (WorkHealth Referral Form, Mot. for Summ. J., ECF No. 42, Ex. B).

WorkHealth could not accept the referral because Plaintiff's injury was an aggravation of a previous injury, which instead required a referral through PFD's Human Resources department. (Statement of Material Facts, ECF No. 42, Ex. 1, at ¶ 7–8; PFD Email, 10/3/17, Mot. for Summ. J., ECF No. 42, Ex. C). On October 3, 2017, PFD HR Manager Shauna Bracy sent an email to Chief Richard Davison informing him of WorkHealth's denial of Plaintiff's reevaluation and asking him to "remind the officers that any referral not connected to an initial injury[] must be initiated by Fire HR[.]" (PFD Email, 10/3/17, ECF No. 42, Ex. C). Plaintiff's WorkHealth Referral Form was included in this email as an attachment. *Id.*; Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 5. The email initially circulated within the proper chain of command, but was later forwarded to other lieutenants and captains, with Plaintiff's WorkHealth Referral Form still attached. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 6; Statement of Material Facts, ECF No. 42, Ex. 1, at ¶ 16.) Subsequently, other PFD employees began questioning Plaintiff about the email attachment, specifically concerning Plaintiff's veracity and fitness to perform his job duties. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 7). Plaintiff asserts that, as a result of this questioning, he sustained emotional and psychological injuries including severe and chronic Post-Traumatic Stress Disorder (PTSD), major depression, feelings of helplessness and hopelessness, impairment of self-image and self-esteem, fatigue, anxiety, and depression. *Id.* at ¶ 30.

Plaintiff initiated this action by filing a Complaint in the Philadelphia Court of Common

Pleas, asserting tort claims for intrusion upon seclusion, intentional and negligent infliction of emotional distress, breach of implied contract, violation of the Health Insurance Portability and Accountability Act (HIPAA), and violation of the Americans with Disabilities Act (ADA). (ECF No. 1, Ex. A). On September 21, 2018, Defendant filed a Notice of Removal to the United States District Court for the Eastern District of Pennsylvania based on federal question jurisdiction. (ECF No. 1, at 1). The case was assigned to the Honorable Judge Nitza I. Quinones Alejandro. On September 28, 2018, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF No. 2). Plaintiff did not respond to the motion within the time required to do so, and on October 25, 2018, Judge Quinones granted the motion and dismissed the case. (Order, ECF No. 4). On November 1, 2018, Plaintiff filed a Motion to Vacate the dismissal, which the court granted on November 16, 2018. (Mot. to Vacate, ECF No. 6; Order, ECF No. 7). Subsequently, Plaintiff filed an Amended Complaint. (Pl.'s Am. Compl., ECF No. 8).

On December 17, 2018, Defendant filed a Second Motion to Dismiss for Failure to State a Claim, arguing among other points that the Political Subdivision Tort Claims Act provided immunity for Defendant from Plaintiff's tort and infliction of emotional distress claims. (Def.'s 2d. Mot. to Dismiss, ECF No. 10, at 1). In response, Plaintiff filed a Second Amended Complaint dropping the tort and infliction of emotional distress claims, and the court denied Defendant's Second Motion to Dismiss as moot. (Pl.'s 2d. Am. Compl., ECF No. 11; Order, ECF No. 12).

Plaintiff's Second Amended Complaint asserts claims of breach of implied contract, violation of the Americans with Disabilities Act (ADA), and violation of Plaintiff's substantive due process rights under the 4th and 14th Amendments to the United States Constitution. (Pl.'s

2d. Am. Compl., ECF No. 11, at 7, 9, 11, 14). In his Count I, he asserts that Defendant violated a contract implied in the Employment Agreement between Plaintiff and Defendant that Defendant would keep medical information it collected from Plaintiff secure and confidential. *Id.* at ¶ 38. In Count II, Plaintiff asserts that Defendant violated the ADA by failing to safeguard the privacy of Plaintiff's confidential medical information. *Id.* at ¶ 56. In his Count III, Plaintiff asserts that Defendant had a custom, policy or practice of failing to safeguard the privacy of its employees' medical information, and that as a result Defendant violated Plaintiff's liberty and privacy interests under the 4th and 14th Amendments. *Id*. at ¶ 71, 82–83. Finally, in his Count IV, Plaintiff asserts that Defendant's failure to train its employees in how to properly handle confidential medical information constituted a custom or policy that violated Plaintiff's liberty and privacy interests and his 14th Amendment right to substantive due process. *Id.* at ¶ 94–95, 105.

On January 22, 2019, Defendant filed a Third Motion to Dismiss for Failure to State a Claim, to which Plaintiff filed a Response on February 5, 2019. (Def.'s 3d. Mot. to Dismiss, ECF No. 14; Pl.'s Resp. to 3d. Mot. to Dismiss, ECF No. 15). On May 15, 2019, Judge Quinones denied the Motion to Dismiss. (Order, ECF No. 16). On May 29, 2019, Defendant filed an Answer to Plaintiff's Second Amended Complaint. (Answer, ECF No. 17). On February 4, 2020, both parties consented to my jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 26; Order, ECF No. 27).

On November 25, 2020, Defendant filed the instant Motion for Summary Judgment. (Mot. for Summ. J., ECF No. 42). Plaintiff filed a Response on March 8, 2021. (Pl.'s Resp. to Mot. for Summ. J., ECF No. 49). The matter is now ripe for disposition.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.* It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477

U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

III. **DISCUSSION**

In his Amended Complaint, Plaintiff raises three claims: (1) a state law claim of breach of implied contract (Count I); (2) a federal law claim under the Americans with Disabilities Act (ADA) (Count II); and (3) a federal law claim under the 4th and 14th Amendments for violation of his substantive due process rights (Counts III and IV). (Pl.'s 2d. Am. Compl., ECF No. 11). Defendant argues that Plaintiff has not shown a genuine issue of material fact as to any of these claims, and that this Court should grant judgment in its favor on all claims. (Mot. for Summ. J., ECF No. 42, at 1–2). I will address each of Plaintiff's claims in turn.

A. **Implied Contract**

In his Count I, Plaintiff claims that Defendant breached an implied contract to keep Plaintiff's medical information confidential. (Pl.'s 2d. Am. Compl., ECF No. 11, at 7–9). Plaintiff argues that, in the Employment Agreement between Plaintiff and Defendant, Defendant implicitly promised to keep Plaintiff's medical information secure and confidential, and that it would only use Plaintiff's medical information for the purposes of evaluating Plaintiff's eligibility for workers' compensation benefits. *Id.* at ¶ 38–40. Plaintiff also asserts that Defendant implicitly promised to safeguard Plaintiff's personal information through its privacy policies, code of conduct, and departmental security practices. *Id.* at ¶ 41. Plaintiff argues that Defendant breached this implied contract by sharing Plaintiff's medical information with PFD

employees who were outside the normal chain of command. *Id.* at ¶ 52. Plaintiff asserts that, as a result of this breach, he sustained emotional and psychological injuries including severe and chronic Post-Traumatic Stress Disorder (PTSD), major depression, feelings of helplessness and hopelessness, impairment of self-image and self-esteem, fatigue, anxiety, and depression. *Id.* at ¶ 30.

Defendant argues in its Motion for Summary Judgment that Plaintiff has not shown that an implied contract existed. (Mot. for Summ. J., ECF No. 42, at 3). Defendant also argues that Plaintiff has not shown that Defendant breached any implied contract by disclosing Plaintiff's WorkHealth referral form only to other PFD employees, and that Plaintiff has asserted damages only for emotional injuries, which are not recoverable in breach of implied contract claims. *Id.* at 5–7.

1. **Background Law**

A claim for breach of contract has three elements: (1) the existence of a contract; (2) a breach of the contract; and (3) recoverable resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from [their] acts in the light of the surrounding circumstances." *Liss & Marion P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652, 659 (2009) (quoting *Elias v. Elias*, 428 Pa. 159, 237 A.2d 215, 217 (1968)). Implied contracts arise "under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." *Enslin v. Coca-Cola Co.*, 2017 WL 1190979, at *13 (E.D. Pa. 2017) (citing *Hertzog v. Hertzog*, 29 Pa. 465, 468 (1857)).

7

2.  **Application**

Here, Plaintiff alleges that the Employment Agreement between Plaintiff and Defendant created an implied obligation that both parties would maintain Plaintiff's medical information confidentially and securely. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 38). Plaintiff also alleges that, through its privacy policies, Code of Conduct, departmental security practices, and other conduct, Defendant implicitly promised to safeguard Plaintiff's confidential medical information in exchange for his employment. *Id.* at 41.

In support of this claim, Plaintiff cites to *Enslin v. Coca-Cola Co.*, which found that Plaintiff had fairly alleged an implied contract to protect Plaintiff's personal information where Plaintiff claimed that Defendant, "through privacy policies, codes of conduct, company security practices, and other conduct, implicitly promised to safeguard his [information] in exchange for his employment." 136 F.Supp.3d 654, 674–75 (E.D. Pa. 2015) (hereinafter "*Enslin I*"). However, what Plaintiff fails to note is that this holding was in response to a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Id.* at 658. Two years later, the court granted Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim. *Enslin v. Coca-Cola Co.,* 2017 WL 1190979 (E.D. Pa. 2017) (hereinafter "*Enslin II*"). The court held that Coca-Cola's Enterprises Code of Conduct did create binding obligations on the company, but only as to the duties expressly stated in the Code of Conduct, and that a general duty to protect personal information was not among those expressly-stated duties. *Id*. at *13.

Here, Plaintiff has copied *Enslin I*'s language regarding privacy policies, codes of conduct, and security practices, but has not made any factual allegations as to the explicit contents of any such PFD policies. This ultimately makes *Enslin*, where the issue concerned whether an implied contract arose from express provisions regarding personal information which

8

were identified by Plaintiff and contained in company documents, inapplicable. Plaintiff also alleges an implied contract through the deposition testimony of Defendant's Corporate Designee Shauna Bracy, who, when asked about PFD's policy, practices, and procedures regarding the dissemination of documents containing medical information, responded that "the only people that should be able to see or have access to it would be Fire Fighter Maude and his chain of commands." (Bracy Dep., at pg. 42, lines 6–13). However, this vague assertion that such information "should" only be circulated within the proper chain of command does not establish that Plaintiff and Defendant had any implicit mutual agreement rising to the level of an implied-in-fact contract. *See Hertzog*, 29 Pa. at 468. Plaintiff has not made any allegations tending to show that Defendant intended to enter into an agreement to protect his medical information from being shared internally in this manner. Therefore, he has not fairly alleged the existence of an implied contract.

Further, a breach of implied contract claim requires a showing that Plaintiff sustained recoverable damages, *see Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.*, 137 A.3d at 1258, but Plaintiff has not alleged recoverable damages for this claim. Under Pennsylvania law, damages for emotional distress are not allowed in breach of contract actions, with two exceptions: (1) where the emotional distress accompanies bodily injury, and (2) where the breach is of such a type that serious emotional disturbance is a particularly likely result. *See Landis & Setzler, PC v. Aamodt*, 2014 WL 10803027, at *3 (Pa. Super. Ct. 2014) (citing *Rittenhouse Regency Affiliates v. Passen*, 482 A.2d 1042, 1043 (Pa. Super. Ct. 1984)). Here, Plaintiff has not alleged any bodily injury in conjunction with his alleged emotional distress; nor is this the type of breach likely to result in serious emotional disturbance. *See* Restatement (Second) of Torts § 353, Comment A (listing common examples of this type of contract as "contracts of carriers and

9

innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death"). Therefore, Plaintiff has not shown that he suffered recoverable damages as a result of PFD's disclosure. While a grant of summary judgment on the sole basis of absence of provable damages is generally improper, *see Thorsen v. Iron and Glass Bank*, 476 A.2d 928, 932 (Pa. Super. Ct. 1984), as discussed above, this Court also finds that Plaintiff has not shown the existence of an implied contract. Because Plaintiff does not have evidence of an implied contract or that he suffered any recoverable damages, his breach of implied contract claim fails. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.*, 137 A.3d at 1258.

Accordingly, Defendant's Motion for Summary Judgment as to Count I is granted.

**B.     ADA**

In his Count II, Plaintiff claims that Defendant violated the ADA by failing to safeguard the privacy of Plaintiff's medical information. (Pl.'s 2d. Am. Compl., ECF No. 11, at 9–11). Plaintiff asserts that the medical information at issue was obtained as a result of a medical inquiry in the context of a workers' compensation claim and concerns confidential information about recurring pain from a prior work injury. *Id.* at ¶ 57–58. Plaintiff argues that Defendant's disclosure of this information to various PFD supervisors violated the ADA's requirement that such information be kept confidential. *Id.* at ¶ 60–62.

Defendant responds that Plaintiff volunteered the information contained in the WorkHealth referral form, and that the ADA does not penalize the disclosure of volunteered information. (Mot. for Summ. J., ECF No. 42, at 8–9).

**1.     Background Law**

42 U.S.C.A. § 12112(d)(3)(B), (4)(B)&(C) provides that "[a] covered entity may make

inquiries into the ability of an employee to perform job-related functions," and that any medical information obtained as a result of such inquiries is to be "treated as a confidential medical record." Courts construe what constitutes a medical inquiry under the ADA in accordance with the plain language of the statute. *Sheriff v. State Farm Ins. Co.*, 2013 WL 4084081, at *8 (W.D. Pa. 2013). Courts have found that no medical inquiry occurred where the employer inquiring about an employee's injury did not know about the injury before making the inquiry, or where the employee volunteered the information to the employer. *See EEOC v. Thrivent Financial for Lutherans*, 700 F.3d 1044, 1049–50 (7th Cir. 2012) (finding that no medical inquiry was made under section 12112(d)(4) when employer asked employee for reason for employee's absence from work and did not know employee was ill or physically incapacitated before initiating interaction); *EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1047–48 (10th Cir.2011) (holding that information voluntarily provided to employer by employee about employee's HIV status was not protected by section 12112(d)(4) because disclosure was not the result of "any sort of examination or inquiry"); *Cash v. Smith,* 231 F.3d 1301, 1307 (11th Cir.2000) (finding section 12112(d)(4) inapplicable where disclosure of medical information was not the result of a medical examination but of a voluntary disclosure made by employee to her supervisor); *Sheriff*, 2013 WL 4084081 (finding no medical inquiry by employer where plaintiff's former supervisor shared information about plaintiff's medical condition with a different employee without plaintiff's consent). A general inquiry directed to an employee by an employer who has no preexisting knowledge that the employee was ill or incapacitated will not subject the employer to liability under 12112(d)(4). *Id.* at *8 (citing *Thrivent*, 700 F.3d at 1050–52 ("[P]revious courts have required—at a minimum—that the employer already knew something was wrong with the employee before initiating the interaction in order for that interaction to constitute a 42 U.S.C. §

11

12112(d)(4)(B) inquiry.")). "[C]ourts have allowed claims of illegal disclosure of confidential medical information to proceed to a jury when there are facts in the record demonstrating that a supervisor probed an employee for medical information or conditioned the employee's job accommodation or medical leave on the employee's provision of medical information to the supervisor." *Sherrer v. Hamilton Cnty. Bd. of Health*, 747 F.Supp.2d 924, 933 (S.D. Ohio, 2010).

## 2. Application

Plaintiff alleges that the WorkHealth referral form Captain Zimmerman completed constituted a medical inquiry by Defendant concerning a workers' compensation claim. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 57–59). Defendant responds that, because Plaintiff requested Captain Zimmerman fill out the form and instructed him what to write on the form, Plaintiff in fact volunteered the medical information in question, and therefore Plaintiff has not alleged a medical inquiry for purposes of the ADA. (Mot. for Summ. J., ECF No. 42, at 8–9).

Taking all facts in the light most favorable to Plaintiff, Plaintiff has not alleged a medical inquiry for purposes of an ADA claim. Plaintiff alleges that, subsequent to the forwarding of the email containing Plaintiff's WorkHealth referral form, "multiple inquiries were made among management-level and other personnel … concerning [Plaintiff's] fitness to perform his job duties and his veracity;" however, these subsequent inquiries are not relevant to the question of whether the completion of the WorkHealth form itself constituted a medical inquiry. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 7).

Regarding the WorkHealth form, the undisputed facts in this case show that Plaintiff contacted his supervisor, Captain Zimmerman, and requested that he complete the referral. (Statement of Material Facts, ECF No. 42, Ex. 1, at ¶ 3). Captain Zimmerman included the

single statement referencing Plaintiff's back injury at Plaintiff's request. *Id.* at 4–5. Plaintiff has not produced any evidence that he provided this information in response to any inquiry from PFD. For example, Plaintiff has cited no evidence that Defendant had any preexisting knowledge of the reoccurrence of Plaintiff's back injury, or that Defendant reached out and asked him to disclose his injury. *See e.g.* Pl.'s Deposition, 11/7/2019, ECF No. 42, Ex. A, at 30–34 (stating that Plaintiff did not inform anyone at PFD about the reoccurrence of his back injury until he voluntarily called Captain Zimmerman and asked him to fill out the WorkHealth referral form). Nor has Plaintiff cited any evidence that Defendant required him to disclose his injury to obtain leave or other benefits. *Contrast Doe v. U.S. Postal Service*, 317 F.3d 339, 333–34 (D.C. Cir. 2003) (finding that plaintiff did not disclose diagnosis voluntarily where employer conditioned plaintiff's receipt of FMLA leave on submission of medical documentation). Rather, the undisputed evidence shows that Plaintiff volunteered the information regarding his back injury to receive a referral to a third-party clinic for evaluation of a possible workers' compensation claim. In short, Plaintiff does not dispute that he, not PFD, initiated the interaction leading to the disclosure of his medical information. Further, Plaintiff has not presented any evidence that he could not have simply declined to submit the WorkHealth referral form and thus avoided providing PFD with his medical information. *See Sheriff*, 2013 WL 4084081 at *8; *Thrivent*, 700 F.3d at 1050–52. Because Plaintiff volunteered, and Defendant did not inquire into, the information regarding his back injury, he has not fairly alleged a claim for improper disclosure under the ADA.

Accordingly, Defendant's Motion for Summary Judgment as to Count II is granted.

### C. Substantive Due Process Claims

In his Counts III and IV, Plaintiff argues that Defendant violated Plaintiff's substantive

13

due process rights under the 4th and 14th Amendments by disclosing his confidential medical information. (Pl.'s 2d. Am. Compl., ECF No. 11, at 11–17). Plaintiff asserts that Defendant had a custom, policy, or practice of failing to safeguard employees' medical information, and that Defendant's actions in allowing this information to be disseminated to PFD supervisors shock the conscience. *Id.* at ¶ 71, 77. Plaintiff also argues that Defendant failed to train its employees in the proper handling of confidential medical information, and that this failure to train constitutes a custom, policy, or practice and shocks the conscience. *Id.* at ¶ 103–104.

Defendant responds that Plaintiff arguably has a substantive due process right to the continued confidentiality of his medical records, but that Defendant's behavior did not shock the conscience because Plaintiff discussed his back injury with coworkers and because Plaintiff's inability to physically perform firefighter work became evident when he missed work due to his injury and never returned to full-duty status. (Mot. for Summ. J., ECF No. 42, at 9, 11–12). Defendant also argues that the forwarded emails do not reach the level of deliberate indifference, and that Plaintiff has offered no evidence to suggest that any of the individuals involved in the email thread were aware that any harm would befall Plaintiff as a result of the communications. *Id.* at 12. Finally, Defendant asserts that Plaintiff has failed to show any municipal policy or custom that was the moving force behind the alleged constitutional violation. *Id.* at 14.

1.  **Background Law**

A substantive due process claim has four elements: (i) the defendant acted under color of law; (ii) a protected property or liberty interest is implicated; (iii) the defendant owed the plaintiff a duty of care; and (iv) a deprivation of a constitutional due process right occurred. *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010) (citing *Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994)). "[T]he government conduct must be 'so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id*. (citing *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006)). "[T]hree possible standards can be used to determine whether state action shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm." *Phillips v. County of Allegheny*, 515 F.3d 224, 241 (3d Cir. 2008). Deliberate indifference requires that: (1) the municipal actor be aware of facts from which an inference can be drawn that substantial risk of serious harm exists, and (2) he actually draw such an inference. *Brown v. Williams*, 399 F.Supp.2d 558 (D. Del 2005). The determination of whether an action shocks the conscience is "dependent upon the facts of each particular case." *Id*. (citing *Kaucher*, 455 F.3d at 425-26).

Municipal liability under 42 U.S.C. § 1983 only attaches when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Watson v. Abington Tp*., 478 F.3d 144, 155 (3d Cir. 2007) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978)). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). A plaintiff may establish a custom "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Where the alleged custom or policy includes a failure to train, liability requires a showing of "deliberate indifference," which exists where: "(1) municipal policymakers know that employees will confront a particular situation; (2) the

situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).

### 2. Application

Plaintiff's interest in the privacy of his medical information is protected by substantive due process. *See Ms. B. v. Montgomery Cty. Emergency Serv., Inc.,* 799 F.Supp. 534, 537 (E.D. Pa. 1992); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir. 1991); *U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577–78 (3d Cir. 1980). Therefore, this analysis will focus on whether Plaintiff has shown a genuine issue of material fact as to whether Defendant's actions shocked the conscience, and whether Defendant had a policy or custom that led to the disclosure of Plaintiff's medical information.

Plaintiff alleges that Defendant's actions shock the conscience because they resulted in damages to Plaintiff's professionalism, reputation, fitness, and veracity. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 77). Plaintiff asserts that Defendant acted with deliberate indifference by doing nothing to ensure that its employees properly handled confidential medical information, and by failing to adequately train its employees in the handling of such information. *Id.* at ¶ 77–80, 99–100. Plaintiff also asserts that Defendant "knew that damages to Plaintiff [] were substantially certain to occur and was an obvious and known risk." *Id.* at ¶ 80. However, Plaintiff has not cited any facts to support the conclusion that Defendant was aware, or that it could have drawn an inference, that the forwarding of Plaintiff's WorkHealth referral form to various internal supervisors posed a substantial risk of serious harm. A reoccurrence of a back injury is generally not considered to be particularly embarrassing or personal, and Plaintiff has pointed to no facts to

16

support the conclusion that Shauna Bracy or any of the other individuals involved in the email chain at issue had any idea that forwarding Plaintiff's referral form would cause others to question his fitness for duty. Furthermore, Plaintiff admitted in his deposition testimony that he himself told other individuals within PFD about his back injury. (Pl.'s Dep., at pg. 82, line 2–12). Because of this, Plaintiff has not presented evidence that Defendant's actions in forwarding the email containing his WorkHealth referral form were so egregious as to shock the conscience.

Plaintiff also claims that Defendant had a custom or policy both of failing to safeguard its employees' medical information and of failing to train its employees in how to handle such information. (Pl.'s 2d. Am. Compl., ECF No. 11, at ¶ 69–71, 101). Plaintiff asserts that these allegations are borne out in Shauna Bracy's deposition testimony, where she stated that it was PFD policy that only Plaintiff's chain of command be given access to his WorkHealth referral form. (Pl.'s Resp. to Mot. for Summ. J., ECF No. 49, at 13–14; Bracy Dep., at pg. 42, lines 6–13). Ms. Bracy's testimony on this point is not at all supportive of Plaintiff's *Monell* claim. *See Monell*, 436 U.S. at 694. Ms. Bracy testified that the policy was to share medical information only on a "need to know" basis. If Defendant had followed this policy, Plaintiff's alleged constitutional violation would not have occurred, as his information would not have been disclosed outside his chain of command. This is the opposite of what is meant by the custom/policy requirement of § 1983, which requires the custom or policy itself to be the moving force behind the constitutional violation. *See id.*; *Watson*, 478 F.3d at 155.

Additionally, Plaintiff has not asserted any facts to support his contention that Defendant had a custom or policy of failing to safeguard its employees' medical information, or failing to train its employees in the handling of such information. Plaintiff has not provided evidence that the PFD has a policy or custom of allowing the disclosure of medical information to supervisors

17

outside the normal chain of command, or that Defendant had adopted a policy of *not* training employees how to handle confidential medical information. Further, Plaintiff has not asserted evidence that Defendant ever disclosed confidential employee medical information in this manner before, let alone shown that such conduct is "so well-settled and permanent as virtually to constitute law." *Andrews*, 895 F.2d at 1480; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–34 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Clemens v. Cobley*, 1985 WL 5012, at *4 (E.D. Pa. 1985) (evidence of only two incidents involving the same parties insufficient to show municipal policy to train and supervise inadequately); *Charleston v. Corizon Health, Inc.*, 2018 WL 1757606, at *18 (E.D. Pa. 2018) (evidence of prison warden's failure to respond to a singular grievance insufficient to show a policy or custom of ignoring inmate grievances); *Thomas v. City of Phila.*, 804 A.2d 97, 108 (Pa. Commw. Ct. 2002). Similarly, Plaintiff has not shown deliberate indifference on the part of PFD because he has not cited any facts showing that PFD knew that its employees would confront this sort of situation. *See Carter*, 181 F.3d at 357; *see also Kocher v. Larksville Borough*, 926 F.Supp.2d 579, 605 (M.D. Pa. 2013) (finding no deliberate indifference where plaintiff did not show any evidence of a history of borough employees mishandling personnel files, or any evidence of another incident like the one involving plaintiff). Because of this, Plaintiff has not fairly established that a policy or custom of Defendant's inflicted the alleged constitutional injury, and therefore has not fairly alleged a § 1983 violation of Plaintiff's substantive due process rights.

Accordingly, Defendant's Motion for Summary Judgment as to Counts III and IV is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment as to each of Plaintiff's claims.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge